JOHN. G. OWEN v. ARTHUR HILL ET AL.

*Public works—Bond to secure payment for labor and material—
Neglect of officers of school district to require—
Notice of failure.*

1. A *surety* on a bond given to secure the performance of a contract for building a school-house cannot recover of the trustees of the district for moneys due him for materials furnished in the erection of the building, by reason of their failure to require the contractor to execute the statutory bond provided for by Act No. 94, Laws of 1883.

2. Whether such trustees are liable *in any event* for such neglect of duty, query,—SHERWOOD and CHAMPLIN, JJ., holding them so liable, and CAMPBELL, C. J., and MORSE, J., reserving their opinion on the subject.[1]

Error to Saginaw. (Gage, J.) Argued June 16 and 17, 1887. Decided October 6, 1887.

Case, for failure of trustees of school district to require contractor to execute bond required by Act No. 94, Laws of 1883. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Edget, Brooks & Conway*, for appellant.

*Hanchett & Stark*, for defendants.

CHAMPLIN, J. I take a statement of the case from the brief of counsel for defendants. The italics are theirs:

"1. This suit is in trespass on the case, alleging as the sole cause of action that the defendants were, on the third day of September, 1885, trustees of union school district of the city of Saginaw, and as such trustees *on that day* let a contract to Benson Haskins, by which he was to furnish materials and build a school-house for said school district for the sum of $10,069; that the building was of such a char-

---

[1] See *Eaton v. City of Monroe*, 63 Mich. 525.

acter that, if belonging to a private person, a lien for labor and materials would attach in favor of persons furnishing them.

"That, under Act No. 94 of the Session Laws of 1883, it was the duty of defendants, *as such trustees, contracting in behalf of the school district,* to require sufficient security by bond for the payment by said contractor, and by all subcontractors, for all labor performed or material furnished in the erection or ornamenting of the building, *in such amount and with such sureties as should meet the approval of the said trustees acting as such board of education,* conditioned for the payment by such contractor, as the same should become due, of all indebtedness which might accrue to any person on account of labor performed or material furnished in the erection or ornamenting of such building, and to require that such bond should be deposited with and held by such board of education for the use of any party interested therein.

" That the defendants neglected their duty in that behalf, and, in neglect of the requirements of said statute, did not require or obtain any bond from said contractor of any description whatever.

" That the said plaintiff, *after the said contract had been let to the said Haskins,* did, at his request, furnish and deliver to him, for the purpose of use in the construction of said building, materials to the value of $1,500, and which were used in such construction, and for which the plaintiff would have had a lien on the building if the same had belonged to a private person; that Haskins neglected to pay for such materials, and there was owing to the plaintiff therefor $1,000; that said Haskins is irresponsible, and by reason of the defendants' failure to obtain the bond from the contractor, which it was their duty to obtain as herein recited, the plaintiff has sustained damages $2,000.

" 2.    The evidence on the part of the plaintiff showed that the defendants were such trustees on the third of September, 1885, and on that day, as such trustees, acting as a board, considered bids which had been made by different parties for constructing a school-house for the district, based on the understanding that the successful bidder should furnish a bond in the sum of $8,000 for the faithful performance of the contract for building the school-house, and decided to accept the bid of Wood & Haskins of $10,059, and authorized the *president* and *secretary* to *sign the contract* with Haskins for the construction of the building *when* the *contract should be approved* by the building committee, *and the bond*

*given to accompany the contract* approved of by the board. The bond referred to of Haskins, in the penalty of $8,000, signed by James C. Mercer and John G. Owen as sureties, was laid before the board, examined, and on motion was accepted and approved.

"In pursuance of this action of the board, the president and secretary entered into a contract with Haskins for the construction of the school building, and the contractor delivered to the trustees said bond, *the plaintiff being the John G. Owen, who signed the bond.* No bond or security of any description was required by or deposited with the board for the payment by the contractor for labor performed or materials furnished.

"The contractor, upon executing the contract, entered upon the construction of the building, and the plaintiff, by agreement with him, furnished, from time to time, during September, October, and November, building material, to be paid for from time to time *as delivered* out of moneys received by the contractor on estimates furnished by the architect, to the amount of $1,498.44, upon which he was paid by Haskins $700, and the balance, $798.44, remains unpaid.

"The building committee of the school board had knowledge at the time of the delivery of the materials that the plaintiff was furnishing materials to the contractor, and were advised generally of the state of the account.

"On the twenty-first of December the school board took possession of the building, in pursuance of the terms of the contract, on account of Haskins' default and abandonment of the work; and the plaintiff has been unable to obtain from the contractor or from the estimates made by the board any further moneys to apply on his account.

"3. The defendants' evidence was that they (the trustees) were not aware of the existence of any statute making it their duty to require from the contractor any bond for the protection of persons furnishing labor or materials; that Haskins was in default, and had abandoned the work when the district took possession of the building; that he had been then paid in full on the estimates made of the work, reserving the 15 per cent. provided for by the contract, and that prior to the trial of this case the district had completed the building at an expense over the contract price of $1,500.

"4. Upon this evidence the circuit judge in his charge directed a verdict for the defendants."

The liability of public officers for neglect of duty depends upon the statute under which they are required to act, and therefore I consider it best to quote so much of the statute under which the duty in this case is imposed as will be necessary to the determination of the points raised.

Section 1 enacts—

"That when public buildings or other public works· are about to be built, repaired, or ornamented under contract, at the expense of this State, or of any county, city, village, township, or school district thereof, upon which buildings or works liens might attach for labor or materials if belonging to private persons, it shall be the duty of the board, officers, or agents contracting on behalf. of the State, county, city, village, township, or school district to require sufficient security by bond for the payment by the contractor, and all subcontractors, for all labor performed or materials furnished in the erection, repairing, or ornamenting of such building.

"Sec. 2. Such bond shall be executed by such contractor to the people of the State of Michigan, in such amount and with such sureties as shall be approved by the board, officer, or agent acting on behalf of the State, county, city, village, township, or school district as aforesaid, and conditioned for the payment by such contractor, or any subcontractor, as the, same may become due and payable, of all indebtedness which may accrue to any person, firm, or corporation, on account of any labor performed or materials furnished in the erection, repairing, or ornamenting of such building or works. Such bond shall be deposited with and held by such board, officer, or agent for the use of any party interested therein.

"Sec. 3. Such bond may be prosecuted and recovery had by any person, firm, or corporation to whom any money shall be due and payable on account of having performed any labor or furnished any materials in the erection, repairing, or ornamenting of such building or works, in the name of the people of this State, for the use and benefit of such person, firm, or corporation."

It will be noticed that the duty to require the bond is specifically imposed in all cases falling within the purview of the statute. It is certain that the board of trustees neglected to perform that duty. Those two facts are established in this case. The time at which the bond must be required is not

definitely fixed by the act, but inferentially, and, giving the act a reasonable construction, it should be done before or cotemporaneously with the execution of the contract. The learned judge who presided at the trial in the court below was of the opinion that the requirement should be contained in and be a part of the contract, and its validity made to depend upon the contractor entering into such bond as the board should approve, and I am not prepared to say that he is not correct in this opinion. The law at least requires that the board shall in some manner require the bond to be given, and in such time and manner as shall secure the object of the statute, which is entitled—

"An act to insure payment of wages earned, and for materials used, in constructing, repairing, or ornamenting public bui.dings and public works."

The mere act of requiring a bond is a ministerial act involving no discretion, and consequently no judicial functions. In addition to requiring the bond the law requires that they shall first fix the amount in which the bond shall be given, and second they shall pass upon the sufficiency of the sureties. These two requirements doubtless involve in a limited measure the exercise of judicial functions. I do not think these functions are so connected with the ministerial duty of requiring the bond as to be inseparable, nor do I think that the performance of one involves the exercise of the other. In neglecting to require a bond at all, the board neglected the performance of a plain ministerial duty imposed by statute, and it is well settled that, when the law casts any duty upon a person which he refuses or fails to perform, he is answerable in damages to those whom his refusal or failure injures. *Ferguson v. Earl of Kinnoull*, 9 Clark & F. 251, 279, 289, and the cases there cited; *Strickfaden v. Zipprick*, 49 Ill. 286; *Adsit v. Brady*, 4 Hill, 630; *Hover v. Barkhoof*, 44 N. Y. 113; *Raynsford v. Phelps*, 43 Mich. 342. Numerous other cases might be cited in support of the proposition,

but it is unnecessary.   The question is fully discussed in *Ferguson v. Earl of Kinnoull*.

Chief Justice Taney, in *Kendall v. Stokes*, 3 How. 87, distinguishes the *Ferguson Case* from the one he was considering; but the point to which he calls attention has a direct bearing in this case, namely, the binding effect of the judgment upon the presbytery has its equivalent in this case in the positive requirement of the statute upon the board of trustees.

But whether the whole transaction of requiring the bond and its approval be looked upon as involving the exercise of judicial functions, I am still of opinion that defendants would be liable for an entire neglect to attempt the performance of the duty required by statute.   It is a general principle that courts or officers exercising judicial functions shall not be held liable for any error of judgment.   There is a distinction, however, between cases where parties invested with discretionary authority exercise it to the injury of an individual, and where they neglect to exercise it at all.   If the law imposes the duty, and calls for action, where such duty is imposed for the benefit of private individuals, the person neglecting the duty to the injury of an individual would be liable whether the duty involved the exercise of discretion or not.

In this case the position was assumed by counsel for defendants that the duty imposed by the statute was a public duty, and the neglect to perform it only affected the public.   If this were so, there would be no liability.   But the contrary is to my mind the object and purpose of the law.   The duty was imposed to protect individuals, and for the benefit of individual laborers and material-men.   That this is so is too plain for argument.   No person can read the condition of the bond and not be satisfied that it was intended for the protection of the individuals who should furnish to the contractor or subcontractor either labor or material.   Express.

provision of the law is that the bond shall be deposited for the use of any person interested therein, and that it may be prosecuted and recovery had by any person, etc., to whom any money shall be due and payable on account of having performed labor, etc. The principle is this:

"That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual, injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. "Cooley, Torts, 379.

I am aware that it may be regarded as a great hardship to impose this liability upon persons who accept office and perform burdens gratuitously. But the law makes no exceptions, and I can make none. It is presumed that they know the law, and the further presumption is that they will obey it. If they do not, on whom should the loss properly fall; on those who neglect to perform a duty enjoined by law, or those whom the law was designed to protect from loss ?

One other point remains to be considered. It is claimed by counsel for defendants that the plaintiff is precluded from recovery by his own acts. This claim is based upon the fact that plaintiff is a surety upon the bond given by the contractor to the school district for the performance of the work. The bond refers to the contract in the condition, which is as follows:

"The condition of this obligation is such that, whereas, the above-named Benson Haskins has been awarded by said board the contract for building and completing for said board a veneered two-story school-house on a block in H. Miller's addition to the city of Saginaw, unnumbered and lying between. Dearborn and Elm and Webster and Harrison streets, according to the conditions of such contract, signed by said Haskins and by the president and secretary of said board, a copy of which contract is hereto annexed.

67 MICH.—4.

"Now, if the said above-bounden Benson Haskins shall in all things stand and abide by, and well and truly keep and perform, the covenants, conditions, and agreements in such annexed, of and in the original contract contained, as by him to be kept and performed, at the time and in the manner therein specified, or specified in the plans and drafts of the building to be built and the specifications, made by F. W. Hollister, architect, then this obligation to be void; otherwise remain in full force."

The contract requires the giving of the bond signed by plaintiff, to secure the performance of the contract, and as a further security for the same thing provides for the school district having a lien upon all building material which the contractor shall place on the premises.

It requires the contractor to provide himself with all necessary material, and as many laborers and mechanics as may be necessary for a vigorous prosecution of the work; that the school district shall not be answerable for any injury or damage any person may sustain on, about, or from said work, but for all damage the contractor shall be solely liable, and he indemnifies the district against all such damage and all liability on account thereof.

It provides that in case the contractor shall abandon the work, or the district finds it is not carried on fast enough, or that the materials furnished are insufficient and not according to the specifications, or that the foreman or subcontractors fail to supply necessary materials or men to insure the completion of the job, the school district shall have the right to take possession of the work, and of building material on the ground, and complete the job, and use such material therefor, and the expense of such completion shall be charged to the contractor, and should the same, with the payments theretofore made, exceed the contract price for the work and materials, the excess should be repaid by the contractor to the school district; that payments were to be made on monthly estimates, less 15 per cent., which 15 per cent. should be paid when the building was completed and

accepted by the district. But no estimate was to be paid unless the superintendent should certify that the material put into the building and work done were fully equal to the material and labor called for by the contract, and that no claims or liens for materials or labor have been filed against or upon said building in the office of the county clerk of said Saginaw county.

No allusion is made to the execution of the statutory bond, and the strong inference to be drawn from the language of the contract is that no such bond was required or executed. And it seems to me that plaintiff was so intimately connected with the contractor and his undertakings that he is not in a position to charge the board with negligence for not requiring one. His relation to the school district is certainly closer than that of a subcontractor would be, and it would seem inconsistent to place him in a better position than a subcontractor. His relations to the parties to the contract were such that he must be held to be chargeable with notice that no bond was required by the board of trustees; and if he furnished material, not upon the presumption that such bond existed for his protection, but knowing the contrary, and upon the credit of the contractor, he is not in a situation to hold the individuals composing the board liable for negligence in not requiring the bond.

The requirement of the statute was intended as a shield for the protection of the innocent, and not as a sword in the hands of one chargeable with notice of its violation to recover for the delinquencies of his principal from those guilty of no intentional error. This was the view taken substantially by the circuit judge in the court below, who directed a verdict for defendants, and I think the judgment rendered thereon ought to be affirmed.

SHERWOOD, J., concurred with CHAMPLIN, J.

MORSE, J. I concur in the affirmance of this judgment, but reserve my opinion upon the question of the liability of the trustees because of their neglect to comply with the statute in question. I am not as yet satisfied that they would be answerable in damages for such neglect.

CAMPBELL, C. J. I concur with my Brother MORSE.