MAX N. TOBIAS, JR., Judge.
| ,This matter comes to us on remand from the Supreme Court of Louisiana for reconsideration of our earlier decision set forth in Brookewood Investments Co., L.L.C. v. Sixty-Three Twenty-Four Chef Menteur Highway, L.L.C., 12-1205 (La.App. 4 Cir. 1/16/13), 108 So.3d 329, in light of its holding in Smitko v. Gulf South Shrimp, Inc., 11-2556 (La.7/2/12), 94 So.3d 750. See Brookewood Investments Co., L.L.C. v. Sixty-Three Twenty-Four Chef Menteur Highway, L.L.C., 13-0369 (La.4/1/13), 110 So.3d 134. In our original decision, we declared the tax sale to be an absolute nullity and ruled that the tax purchaser’s right of redemption was solely against the tax debtor or record owner of the property and not the City of New Orleans.[1]
1¾After careful review of the Smitko decision, although it dealt with tax sales that were apparently of no legal force or effect and absolutely null for failure to give proper notice and want of due process, we find the Supreme Court did not address the central issue presented by the case presently before us; that is, who is responsible for reimbursing the tax purchaser following a failed tax sale. Accordingly, we find that the Smitko decision sheds no new light upon, and does not change, our early ruling.
Smitko involved a motion for summary judgment brought by the tax sale purchaser in its action to quiet title to real property. The appellate court had affirmed the trial court’s ruling granting summary judgment, which confirmed and quieted the title of the tax purchaser on the basis that the former property owner had failed to timely file a separate action or recon-ventional demand to institute proceedings to annul the tax sale within the statutory *902 six-month period as required by the law then in effect, former La. R.S. 47:2228. Smitko, p. 1, 94 So.3d at 751. On writ of certiorari, the Court reversed, stating that the property owner had sufficiently established that the sheriff failed to provide proper notice of the tax delinquencies and tax sale to the record property owner in compliance with former ]sLa. R.S. 47:2180, our own constitution, and federal due process. Id., pp. 13-15, 94 So.3d at pp. 758-59. Further, the Court noted that since Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 794, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983),[2] Louisiana courts have held that the failure to give notice to a record property owner is a violation of the due process owed to the property owner and that the resulting tax sale is null and void in its entirety. Consequently, the court held that because the tax sale at issue may already have been fatally defective for want of due process, the time limitation for seeking to annul a tax sale as set forth in former La. R.S. 47:2228 did not apply and the reconventional demand brought by the former property owner was timely brought before the trial court. Id.
While Smitko, and the other cases relied upon by Brookewood,[3] address the absolute nullity of a tax sale when notice of the sale is found lacking, none of these cases address the central issue presented herein; that is, who is the responsible party for reimbursing the tax purchaser for monies paid to the tax collecting authority or tax recipient body once a tax sale is annulled for failure to provide sufficient notice of the sale to the property owner. Consequently, because Smitko (and the other cited lack-of-notice cases upon which Brookewood relies) does not |4address or shed any new light upon the reimbursement issue presented, we find that it does not alter or change the decision reached in our earlier opinion. Specifically, we find the Westwego [4] and Lind-ner [5] cases continue to control the outcome *903 of the instant case. Identical to the situation presented before us, both cases involved a tax sale purchaser’s right of reimbursement following a failed tax sale; in Westwego, the tax sale was declared an absolute nullity, and in Lindner, when viewed in context, the tax sale was also an absolute nullity. In short, according to Westwego and Lindner, the tax sale purchaser’s right of recourse against the City ceases at the moment upon which the tax sale is made; for not pretending to sell its own property, the City warrants neither the title to the property nor the return of the purchase price. See Lindner, 116 La. at 372, 40 So. at 736. Consequently, Brookewood’s right of reimbursement, as the tax purchaser, is solely against Sixty-Three, the tax debtor, and it lacks standing to seek reimbursement from the City.[6]
|fiBrookewood contends that the legislature’s enactment of La. R.S. 47:2153C(1) essentially overruled Westwego, Lindner, and its progeny. We disagree. La. R.S. 47:2153C(1) provides:
In the absence of actual notice of the sale to a tax sale party, including a transferee, or the demonstration of a reasonable effort to provide notice, where the name and address of the tax sale party were reasonably ascertainable or where the transfer was recorded after the tax collector completed his pre-sale party research, the tax collector shall cancel the sale of the property and refund the tax sale purchaser the tax sale purchase price.
The general rule against retroactive application of legislative enactments and its exceptions is codified in La. C.C. art. 6, which provides that that “[i]n the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.” Keith v. U.S. Fidelity & Guar. Co., 96-2075, p. 5 (La.5/9/97), 694 So.2d 180, 182-83. Additionally, La. R.S. 1:2 provides that no statute is retroactive unless it is expressly so stated. Unlike La. C.C. art. 6, La. R.S. 1:2 does not distinguish between substantive, procedural and interpretive laws. However, the jurisprudence has generally construed the two provisions as being co-extensive. Id.
Article 6 requires a two-fold inquiry. First, we must ascertain whether the enactment expresses legislative intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends unless the enactment impairs contractual obligations or vested rights. If no such intent is expressed, the enactment must be classified as substantive, procedural, or interpretive. Id., p. 6, 694 So.2d at 183. It is well accepted that substantive laws either establish new rules, rights, and duties or changes existing ones, while interpretive laws merely | ^establish the meaning the statute had from the time of its enactment. Id. Procedural laws prescribe a method for enforcing a previously existing substantive right and relate to the form of the pro *904 ceeding of the operation of the laws. Id. Nonetheless, since the application of legislative enactments has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions, even where the legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. Id.
La. Acts 2012, No. 886, § 1, which enacted La. R.S. 47:2153C(1), contains no clear and unmistakable expression of legislative intent regarding retrospective application. A careful review of La. Acts 2012, No. 886, § 1, reveals that the legislative amendment makes a change in the party responsible for reimbursing the tax purchaser— from the tax debtor to the tax collector— creating a substantive change in the law. Accordingly, we conclude the legislative changes reflected in the amendment to La. R.S. 47:2153C(1) are substantive, and can only be applied prospectively. Thus, applying the law in effect at the time the tax sale in the instant case occurred, as well as at the time the judgment annulling the sale for lack of notice was rendered, Brookewood’s right of reimbursement is against the tax debtor, Sixty-Three, and not the City.
Accordingly, for the foregoing reasons, determining that Smitko does not change or alter our previous decision in Brookewood Investments Co., L.L.C. v. Sixty-Three Twenty-Four Chef Menteur Highway, L.L.C., 12-1205 (La.App. 4 Cir. 1/16/13), 108 So.3d 329, we re-affirm our original decision.

AFFIRMED.

. We summarize our prior decision as follows:
The tax purchaser, Brookewood Investments Co., L.L.C. (“Brookewood”), purchased property at a tax sale conducted by the City of New Orleans (“City”) for the full amount of unpaid ad valorem taxes due on the property in the amount of $591,343.03, plus costs. In due course, Brookewood filed a motion for writ of seizure and possession, seeking corporeal possession of the property. Sixty-Three Twenty-Four Chef Menteur Highway, L.L.C. ("Sixty-Three”), the record property owner, and Jacob Morreale filed a reconventional demand seeking to annul the tax sale on the basis that the City had assessed the property in an erroneous name and failed to provide the requisite notice of the delinquent taxes and tax sale to the proper owner of record, Sixty-ThreeBrookewood then filed a third-party demand against the City and its Ex-Officio Tax Collector seeking reimbursement for the monies it paid in the event the tax sale was declared an absolute nullity. The trial court, having determined that the City failed to provide the proper statutory notice to Sixty-Three, rendered judgment annulling the tax sale and ordered that the judgment would take effect only upon payment of the taxes, costs, and interest by Sixty-Three as provided for in La. Const. Art. VII, § 25(C). The trial court further ruled that Brookewood's sole source for reimbursement for monies paid at the tax sale was against Sixty-Three, the tax debtor and property owner of record, and not the City. On appeal, this court amended the trial court judgment by declaring the tax sale to be an absolute nullity, and relying upon La. Const. Art. VII, § 25(C), Westwego Canal & Terminal Co., Inc. v. Pitre, 197 La. 374, 1 So.2d 550 (1941), and Lindner v. City of New Orleans, 116 La. 372, 40 So. 736 (1906) and its progeny, affirmed that Brookewood’s right of reimbursement is solely against Sixty-Three and not the City.

. In Mennonite, the mortgagee of a property contested a tax sale that occurred after the homeowner failed to pay her property taxes. The mortgagee was not provided notice of the homeowner/mortgagor’s delinquent payment of the taxes or the subsequent tax sale. Id. at 794, 103 S.Ct. 2706. The Supreme Court held that “a mortgagee possesses a substantial property interest that is significantly affected by a tax sale” and therefore "is entitled to notice reasonably calculated to apprise him of a pending tax sale.” Id. at 798, 103 S.Ct. 2706. Because the mortgagee was not afforded it constitutional right to due process, the Court reversed the decision that upheld the tax sale. Id. at 800, 103 S.Ct. 2706.

. Brookewood relies upon the following cases, in addition to Smitko, in support of its position that its right of reimbursement is against the City and not Sixty-Three: Jamie Land Co., Inc. v. Atwood, 06-2057 (La.App. 1 Cir. 6/8/07), 965 So.2d 873; Sutter v. Dane Investments, Inc., 07-1268, 07-1269 (La.App. 4 Cir. 6/4/08), 985 So.2d 1263; and Cressionnie v. Intrepid, Inc., 03-1714 (La.App. 1 Cir. 5/14/04), 879 So.2d 736.

. In Westwego, the Court affirmed the lower court’s determination that, pursuant to La. Const. Art. X, § 11 (1921), providing that "[n]o judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent per annum interest on the amount of the price and taxes paid from date of respective payments, be previously paid to the purchaser,” when a tax sale is declared null, other than "sales annulled on account of the taxes having been paid prior to the date of the tax sale,” the record owner of the property is the party responsible for reimbursing the tax purchaser. Id., 197 La. at 377, 1 So.2d at 551.

. In Lindner, the tax purchaser sought reimbursement from the City after a failed tax sale. The Louisiana Supreme Court, in affirming the trial court’s dismissal of the suit on the City's exception of no cause of action, reiterated that the tax purchaser’s only remedy, as provided in La. Const. Art. 233 (1898), was to recover the amounts paid by him, together with costs and interest, from the property owner and not the City. Specifically, the Lindner court noted that "[a] tax sale, in *903 the absence of special legislation to the contrary, is generally held to be subject to the rule caveat emptor, and the purchaser assumes the risk of all legalities and irregularities in the proceedings, of which, as they are open to inspection, he is presumed to have notice. He is therefore without recourse against the municipality at the instance of which the sale is made, and which, not pretending to sell its own property, warrants neither the title nor the return of the price.” Id., 116 La. 372, 40 So. 736.

. We are somewhat at a loss to explain precisely why Brookewood wants to seek reimbursement from the City in view of La. Const, art. XII, § 10(C) and the jurisprudence interpreting that provision.